**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STANLEY J. NEISHEL, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-2461 |
| v. | (JUDGE CAPUTO) |
| CITADEL BROADCASTING CORPORATION, | (MAGISTRATE JUDGE MANNION) |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court are Magistrate Judge Malachy E. Mannion's Report and Recommendation (Doc. 25) and Plaintiff Stanley J. Neishel's Objections thereto. (Doc. 26). The Magistrate Judge recommended that the Court grant Defendant Citadel Broadcasting Corporation's Motion for Summary Judgment (Doc. 15.) Because no questions of material fact exist regarding Plaintiff's claims of disability- and age-based discrimination under the ADA, the ADEA, and the PHRA, the Court will adopt the Magistrate Judge's Report and Recommendation and grant Defendant's motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## **BACKGROUND**

Defendant Citadel Broadcasting Corporation ("Citadel") employed Plaintiff Neishel, born April 29, 1953, as a production director beginning July 1, 1997, when Citadel purchased Plaintiff's former employer, another broadcasting company at which Plaintiff had been a production director since 1985. (Def.'s Statement of Undisputed Material Facts [hereinafter "Def.'s Statement"], Doc. 17 ¶¶ 1-2; Pl.'s Counterstatement of

Undisputed Material Facts [hereinafter "Pl.'s Counterstatement"], Doc. 23-4 ¶¶ 1-2; Neishel Dep. 24:8-19, Sept. 6, 2006, Doc. 16-2.)  During his employment, Plaintiff reported to the general manager.  At the time he was hired, this was William Betts; later, Stu Stanek served as interim general manager and Regina Todd took over the position on September 1, 1999.  (Def.'s Statement ¶ 4-5; Pl.'s Counterstatement ¶ 4-5.)

      Plaintiff's job required him to "multitask" and his duties included managing the production department and its employees, creating a production schedule, producing commercials and voice work, maintaining production equipment, billing clients for certain production services, and working with the traffic and sales departments to coordinate efforts and make sure all production work was accomplished.  (Def.'s Statement ¶¶ 6-7; Pl.'s Counterstatement ¶¶ 6-7.)  At one point, Citadel assigned another employee, Christopher Norton, to certain handle matters that Neishel, in his words, "can't handle more or less," particularly talking to certain of the less experienced salespeople who were having trouble; Plaintiff, however, states that Norton, an on air personality with no experience in radio production, helped him only in handling two (2) to three (3) out of fifteen (15) salespeople.  (Def.'s Statement ¶ 8; Pl.'s Counterstatement ¶ 8.)  Prior to January 1998, Plaintiff had job-related stress and put in long hours, but experienced no medical problems.  (Def.'s Statement ¶¶ 9, 11; Pl.'s Counterstatement ¶¶ 9, 11.)

      On January 22, 1998, Plaintiff called in to work and Carole Marchwat, sales manager for one of the Citadel stations, answered the phone.  He told her "I don't feel good.  Just tell [Citadel] I am not coming in."  The next day, he again called and told Marchwat he could not come to work because "I don't feel right."   When she asked him what was wrong, he told her that he had passed out the previous day.  (Def.'s Statement

2

¶¶ 12-13; Pl.'s Counterstatement ¶¶ 12-13.)  Marchwat advised him to call his doctor immediately, which he did, and was subsequently hospitalized for eight (8) days with what doctors initially diagnosed as a stroke but was eventually revealed to be a tumor. (Neishel Dep., at 106:1- 108:9.)  He took sick leave from January 22 through January 28, 1998.  (Def.'s Statement ¶ 14; Pl.'s Counterstatement ¶ 14.)

After his hospitalization, Plaintiff returned to work.  After September 1999, when Todd became general manager, additional duties were assigned to Plaintiff, some which he thought were "nonsensical" and others which he stated were normally the responsibility of a department other than his.  (Def.'s Statement ¶¶ 29-31, 35, 41-42; Pl.'s Counterstatement ¶¶ 29-31, 35, 41-42.)  Plaintiff did not complete all of these assignments, but contends that the reasons he did not were lack of appropriate help for his increased workload and lack of cooperation from other personnel not under his control.  (Def.'s Statement ¶¶ 35-45; Pl.'s Counterstatement ¶¶ 35-45.)

On January 20, 1999, Plaintiff was called into a meeting with Todd and two (2) other managers, at which he was fired.  (Def.'s Statement ¶ 46; Pl.'s Counterstatement ¶ 46.)  Plaintiff filed a charge of discrimination with the Pennsylvania Human Rights Commission in June 1999, and after receiving his right to sue letter, brought the present suit on December 21, 2005.  (Def.'s Statement ¶¶ 48-49, 58; Pl.'s Counterstatement ¶¶ 48-49, 58.)  In this action, Plaintiff alleges that Defendant terminated his employment (1) because he was regarded as disabled, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 955(a) and (2) because of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the PHRA.

3

Magistrate Judge Mannion recommended that Citadel's Motion for Summary Judgment be granted as to all claims because Plaintiff had failed to make out a prima facie case of discrimination based on either disability or age.  (Report and Recommendation, Doc. 25.)   Plaintiff objects to the recommendation, arguing that the Magistrate Judge erred because he "failed to draw reasonable inferences in favor of the Plaintiff, but rather drew all inferences from the evidence in favor of the Defendant [and] [i]n doing so, he made factual credibility determinations that should be left to the purview of the jury, especially as it pertains to areas of conflicting evidence." (Objection, Doc. 26, at 1-2.)

**STANDARDS OF REVIEW**

**I. Review of Magistrate Judge's Report and Recommendation**

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D.

Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the Court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**II. Summary Judgment**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof,

simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Plaintiff's Objections Were Timely Filed

Defendant contends that Plaintiff's Objections should be overruled because they were filed out of time. Under Local Rule 72.3, Plaintiff was required to file any objections to the Report and Recommendation within ten (10) days of being served with a copy thereof. The day the Report and Recommendation was filed, January 14, 2008, is

excluded from calculation of time, as are Saturdays (here, January 19 and 26), Sundays (here, January 20 and 27), and legal holidays (here, January 21) because the time period was fewer than eleven (11) days. FED. R. CIV. P. 6(a). Application of Rule 6(a) alone would bring the deadline to January 29, 2008. However, Plaintiff was served "by electronic means," as provided under Federal Rule of Civil Procedure 5(b)(2)(E), and therefore, under Rule 6(d), the deadline falls three (3) days later, on February 1, 2008. *See* FED. R. CIV. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C),(D),(E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."). Because Plaintiff filed his Objections on February 1, 2008, his Objections are timely.

**II. Disability Discrimination**

The ADA and the PHRA[1] prohibit employers from discriminating "against a qualified individual with a disability because of the disability in regard to ... [*inter alia*] discharge of employees ...and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to present a prima facie case of discrimination, a plaintiff must allege the existence of three elements: (1) that he or she is disabled within the meaning of the ADA; (2) that he or she is otherwise qualified to perform the essential functions of the employment, with or without reasonable accommodations by the employer; and (3) that he or she has suffered an otherwise adverse employment decision

---

[1] The same legal standard applies to claims under the PHRA and the ADA. *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002). As such, the Court's analysis is coextensive.

as a result of the discrimination. *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).  The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

Plaintiff's ADA claim is brought only under the "regarded as" prong.  (*See* Compl., Doc. 1 ¶ 21.)  A person is "regarded as having such an impairment" if he:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section [defining "physical or mental impairment"] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*); *see also Buskirk v. Apollo Metals*, 307 F.3d 160, 166-67 (3d Cir. 2002) (quoting and applying this definition).  "In order to determine whether [Citadel] regarded [Neishel] as disabled, we must consider the information [Citadel] had regarding [Neishel's] condition and its response to that information."  *Buskirk*, 307 F.3d at 167.

Regarding the information Citadel had, the evidence indicates that Plaintiff scheduled his follow up doctor's appointments outside of working hours.  (Def.'s Statement ¶ 19; Pl.'s Counterstatement ¶ 19.)  He did not participate in Citadel's health insurance plan or provide Citadel with any medical records or request any assistance in performing his duties because of his medical problem. (Def.'s Statement ¶ 20; Pl.'s Counterstatement ¶ 20; Neishel Dep. 130:21 - 131:2, 133:24 - 134:6, 134:25 - 135:2.)

Plaintiff stated that he had trouble with memory after his hospitalization, but that he still competently performed all his job duties.  (Neishel Dep. 128:14 - 129:2.)  He does not remember telling Betts, his manager at the time of his hospitalization, about it, and "didn't think [he] needed to because they noticed I was off for some reason, but I might have mentioned it casually."  (*Id.* 129:3-15.)  Plaintiff did tell Murchwat, who was "more or less like a real good friend" about his hospitalization; "maybe" told Frankie Warren, one of the on-air personalities; and during his hospitalization, spoke with Tommy Jenkins, a co-worker in production who "knew what I was going through [regarding medical problems]." (*Id.* 129:23 - 130:11.)  When asked whether he discussed his hospitalization with anybody other than Murchwat, Warren, and Jenkins, he repeatedly stated that he had not.  (*Id.* 130:18 - 132:6.)  He also stated that he could not recall discussing his medical condition with Todd, his manager at the time of his termination, and stated that "I don't think I would."  (*Id.* 132:7-18.)

In light of this evidence, Magistrate Judge Mannion granted summary judgment in favor of Citadel, after concluding that "there is virtually no evidence that members of Citadel's management had *any* information regarding the plaintiff's condition."  (Report and Recommendation, Doc. 25, at 13.)  Plaintiff objects, pointing to his deposition testimony that he had trouble recalling names and numbers, that Jenkins at times helped him recall names, and that his managers therefore "probably had noticed, I would think, that there was something wrong"; his testimony that he "might have mentioned [his health problems] casually" in January 1998 to Betts, his manager at the time; his testimony that he returned to work wearing a "halter monitor," which is a tape recorder, which others

9

would have seen; and his reasoning that although his employer provided him with additional work in the year following his hospitalization, leading the Magistrate Judge to conclude Citadel did not consider him impaired, "it is equally appropriate to draw the inference that overloading him with work is a classic means of forcing him to quit." (Br. in Supp. of Objections, Doc. 26-1, at 8-10 (quoting Neishel Dep. 129:6-7, 131:7-8.))

But, as the Magistrate Judge noted, even if a question of fact does exist regarding Citadel's awareness that Plaintiff suffered from a medical problem, such awareness would not, by itself, mean Plaintiff was regarded as disabled. "[T[he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (holding plaintiff with "visible and apparent" limp had not presented evidence sufficient to survive summary judgment that he was "disabled" under "regarded as" prong). Rather, the employer must regard the employee "to be suffering from an impairment *within the meaning of the statutes,* not just that the employer believed the employee to be somehow disabled." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002) (emphasis added, internal quotation marks omitted). That is, Citadel must have regarded Neishel as substantially limited in a major life activity, for example, unable to "perform a wide range of jobs." *Id.* (quoting *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999)). In *Rinehimer*, the court upheld summary judgment in favor of an employer on an ADA claim in which the plaintiff failed to show that his employer "believed he could not perform a wide array of jobs." *Id.* at 382. "In fact, the record shows that Cemcolift had Rinehimer

perform various jobs after he returned from his absence due to pneumonia." *Id.* The court continued, "[t]he awareness that an employee is sick combined with some change in his work assignments is not enough to satisfy the 'regarded as' prong of the ADA." *Id.*

In light of the *Rinehimer* court's interpretation of a similar change in workload, Magistrate Judge Mannion did not, contrary to Plaintiff's objection, draw an improper inference from the increase in his workload under Todd. Indeed, Plaintiff himself agreed, in his deposition, that beginning in 1997, "everybody was being asked to do more with less" in the production department, and in some other departments as well. (Neishel Dep. 139:9 - 140:25.)

In sum, the record in this case does not contain a genuine question of material fact regarding whether Citadel regarded Neishel as substantially impaired in a major life activity, that is, unable to perform a wide array of jobs. Todd, Plaintiff's manager at the time he was terminated and no longer a Citadel employee, stated in a declaration that she did not know anything about Neishel's medical status during his employment, "never regarded Mr. Neishel or perceived him as having any particular medical condition or any limitation upon his ability to work," and "did not feel Mr. Neishel was physically or mentally limited in any way in his ability to perform his duties as production director or any other job." (Decl. of Regina Todd, July 19, 2007, Doc. 16-2 ¶¶ 9-10, 13.) Furthermore, Neishel's own deposition testimony indicates that at no point did any person at Citadel tell him that they believed him "unable to perform [his] job duties as a production director because of [his] medical condition." (Neishel Dep. 132:18-22.) And, when asked whether he had "any reason to believe anybody at Citadel viewed [his] medical condition as impairing [his] ability to work," he responded, "Negative. I was getting my job done."

(*Id.* 133:15-18.)

Because Plaintiff has not put forth evidence that he was "regarded as" disabled – an essential element of his prima facie case – that is sufficient to raise a question of material fact and survive summary judgment, I will overrule Plaintiff's objection, adopt the Magistrate Judge's recommendation, and grant summary judgment in favor of Defendant Citadel on Plaintiff's disability discrimination claim under the ADA and the PHRA.

**III. Age Discrimination**

The ADEA and the PHRA[2] prohibit age discrimination in employment against individuals over age forty (40). 29 U.S.C. § 623(a)(1). A plaintiff may establish an age discrimination in employment claim using direct or indirect evidence. *Seibel v. Marketplace Direct, Inc.*, No. 2:05CV684, 2007 WL 788384, at *1 (W.D. Pa. Mar. 13, 2007). A direct evidence case of age discrimination in employment exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989)). The instant matter is not a case involving direct evidence of discriminatory animus.

Rather, in a case such as this one, where there is no direct evidence of age discrimination, a plaintiff may still prevail by presenting circumstantial evidence under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

---

[2]The same legal standard applies to claims under the PHRA and the ADEA. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005). As such, the Court's analysis is coextensive.

12

Under this framework, when a plaintiff alleges that he was unlawfully discharged based on his age, he must first establish a prima facie case, demonstrating by a preponderance of the evidence, that: (1) he was a member of the protected class, *i.e.,* he was over forty (40) years of age; (2) he was qualified for the position; (3) he was discharged; and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. *Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 234 (3d Cir. 1999); *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973-74 (3d Cir. 1998).

### A. Prima Facie Case

At the first step of the *McDonnell* analysis, the Magistrate Judge concluded that Plaintiff had not made out his prima facie case because the evidence indicated that Plaintiff had been replaced by Christopher Norton, who was only one week younger than Plaintiff. (Report and Recommendation, Doc. 25, at 16-17.)  Specifically, Todd stated in her Declaration that she "replaced Mr. Neishel with Christopher Norton as the production director." (Todd Decl., Doc. 16-2 ¶ 11.)  Plaintiff objects, however, stating that significant questions of fact exist regarding whether Chris Norton actually replaced him. (Br. in Supp. of Objections, Doc. 26-1, at 11-13.)  Specifically, Plaintiff submits that it is "not reasonable to believe" that Norton replaced him because Norton, an on-air personality who had only occasionally helped Plaintiff communicate with two (2) or three (3) inexperienced salespeople, and had never done so for more than two (2) hours of his

13

schedule, had no production skills.[3] (*Id.* at 12; Neishel Dep. 45:20 - 49:16.) Plaintiff also avers that satisfying this fourth prong has been made difficult because Defendant objected to and did not answer some of his interrogatories, particularly questions regarding information about "individuals who have worked in the capacity of production manager or production staff since January 1, 1999." (*See* Citadel's Responses to Plaintiff's First Set of Interrogatories, Doc. 23-2.)

Even assuming, without deciding, that this information creates a question of fact as to the fourth prong of the prima facie case, summary judgment is nonetheless appropriate because Defendant articulated a legitimate non-discriminatory reason for terminating Plaintiff, and Plaintiff did not put forward evidence that this reason was pretextual.

### B. Legitimate Non-Discriminatory Reason

As a legitimate non-discriminatory reason for firing Plaintiff, Defendant submitted evidence that Todd and her supervisor Stu Stanek decided to terminate Plaintiff "on account of performance issues." (Todd Decl., Doc. 16-2 ¶ 8.) Todd stated that Neishel "almost never prepared the [production] schedule as requested, [which] resulted in numerous inefficiencies in production and created timeliness problems for our production," and he "regularly did not send out the billing" associated with "co-op scripts," another task for which he was responsible. (*Id.* ¶¶ 5-6.) "It was my opinion," Todd

---

[3] Additionally, Plaintiff submitted payroll records for the last pay period of the year 2000 indicating that Norton was no longer on the payroll, (*see* Br. in Supp., Doc. 26-1, at 12-13; *see also* Doc. 27-1), but these are not particularly helpful, because Plaintiff was fired almost two (2) years earlier, in January 1999.

14

stated, "that Mr. Neishel had a negative attitude at work.  He regularly complained about work, although ne never complained about discrimination."  (*Id.* ¶ 7.)

### C. Pretext

Plaintiff did not put forth evidence that rebuts this articulated legitimate non-discriminatory reason.  In fact, Plaintiff acknowledged that he did stop creating production schedules, partly because no other employees were complying with the schedules, and partly because "there was no sense to it."  (Neishel Dep. 164:6 - 165:10.)  Plaintiff acknowledged receiving a memo from Yvette DeCinti dated November 30, 1998 relating to production problems in the department he ran.  (*Id.* 166:18 - 167:10.)

The record does contains a response memo from Neishel to DeCinti explaining the problems that she noted and stating that "we need more conscientious people such as [lists some employees] who go the extra mile to help out." (Memo "Re: Production Problems, from Stanley Neishel to Yvette DeCinti, Dec. 2, 1998, Doc. 16-2.)  And, as noted above, Plaintiff contends that the reasons he did not complete all the new assignments Todd gave him were lack of appropriate help for his increased workload and lack of cooperation from other personnel not under his control.  (Def.'s Statement ¶¶ 35-45; Pl.'s Counterstatement ¶¶ 35-45.)  But any questions of fact related to these matters go to the business judgment of Citadel rather than to the question of pretext for discrimination.  Even resolving all disputes about production problems and Plaintiff's failure to complete certain tasks in Plaintiff's favor would not demonstrate that at the time Plaintiff was fired, he would not have been fired but for his age.  And it would not negate

Todd's "opinion that Mr. Neishel had a negative attitude at work, ... did not manifest a positive work attitude, and he just did not seem happy at work." (*See* Todd Decl., Doc. 16-2 ¶ 7.)

Plaintiff also submitted his testimony that it was "possible" that his age was a factor in his termination because one of the stations on which he worked "needed a much younger touch to the scripts, ... [m]ore hip hop with a production guy who knew how to say the new slangs and everything like that." (Neishel Dep. 159:20 - 160: 13.)  He acknowledged, though, that he was not aware of any facts to support his belief that managers were seeking younger production staff.  (*Id.* 160:4-13.)  He stated that he did not recall Todd ever commenting to him about his age and stated that she never told him that Citadel wanted younger production staff members, but surmised that "I'm sure the program directors at BHT [one of the radio stations] had probably said something to that effect to her." (*Id.* 160:14-23.)  This speculation, alone, however, is insufficient to create a question of material fact as to whether Defendant's proffered non-discriminatory reason for terminating his employment was a pretext for age-based discrimination.

Because no questions of material fact exist regarding Plaintiff's age discrimination claims, I will overrule Plaintiff's objections, adopt the Report and Recommendation, and grant summary judgment in favor of Defendant Citadel regarding the age discrimination claims under the ADEA and the PHRA.

**CONCLUSION**

After careful consideration, the Court will adopt the Magistrate Judge's Report and Recommendation (Doc. 25).  Therefore, Defendant's Motion for Summary Judgment (Doc. 15) will be granted.

An appropriate Order follows.


February 22, 2008                                           /s/ A. Richard Caputo
Date                                                              A. Richard Caputo
                                                                    United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY J. NEISHEL, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-2461 |
| v. | (JUDGE CAPUTO) |
| CITADEL BROADCASTING CORPORATION, | (MAGISTRATE JUDGE MANNION) |
| Defendant. | |

## **ORDER**

**NOW**, this   22nd   day of February, 2008, upon review of Magistrate Judge Malachy E. Mannion's Report and Recommendation (Doc. 25), **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. 26) are **OVERRULED**.

(2) The Report and Recommendation (Doc. 25) is **ADOPTED**.

(3) Defendant's Motion for Summary Judgment (Doc. 15) is **GRANTED**.

(4) The Clerk of the Court shall mark this case as **CLOSED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge